UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 4:10CV2247 CDP |
| VALLEY VILLAGE, LLC, d/b/a COMFORT INNS & SUITES CHESTERFIELD, et al., ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This is an insurance coverage declaratory judgment case. E.N. is a minor who brought suit in state court against Valley Village, LLC d/b/a Comfort Inns and Suites Chesterfield, and Nasser Bainsaeid. E.N. was staying at Valley Village's Comfort Inn hotel when Bainsaeid statutorily raped her on two separate occasions. In the state court case, E.N. sues Bainsaeid for the sexual assault, and she sues the hotel for various negligent acts, including failing to have sufficient security and failing to supervise Bainsaeid.

The hotel had two insurance policies with Argonaut Great Central Insurance Company: a Commercial General Liability (CGL) policy and a Commercial Umbrella (CU) policy. Argonaut brought this declaratory judgment case asserting that the claims are not covered by either policy. Argonaut and E.N. both have

moved for summary judgment, and the hotel filed a brief supporting E.N.'s position that coverage exists.

I conclude that E.N.'s claims against Bainsaeid's are not covered by either policy. I further conclude that the CGL policy excludes coverage for all of plaintiff's claims against the hotel because all seek to impose liability "arising out of" the sexual misconduct. I conclude that the CU policy excludes coverage regarding plaintiff's claims against Comfort Inn with regard to the first incident, but that there is a genuine issue of material fact as to whether Bainsaeid was employed by Comfort Inn during the second incident. I will therefore grant Argonaut's motion for summary judgment in all respects except whether the Comfort Inn's alleged negligence related to the December 2008 incident is covered by the CU policy.

## **Background**

E.N., a minor, was a resident at Comfort Inn's Chesterfield, Missouri location in late 2008. On October 1, 2008 and December 2, 2008, she was statutorily raped by Nasser Bainsaeid, an employee of Comfort Inn. E.N. filed a lawsuit against Comfort Inn and Bainsaeid in the Circuit Court of St. Louis County. E.N. alleged that Comfort Inn was negligent for breaching various duties to her regarding foreseeable criminal acts, safety, security, security cameras, patrol, dangerous condition of premises, and hiring, supervising, training, and monitoring

of Bainsaeid.  E.N. alleged that she suffered severe injuries to her body and mind, suffered from post-traumatic stress disorder, anxiety, severe emotional distress, pain and suffering, loss of enjoyment of life, and that her future earnings capacity and future ability to enjoy life have been restricted as a result of these incidents.  In the underlying suit, E.N. seeks actual and punitive damages against both Bainsaeid and Comfort Inn.

## The Insurance Policies

Argonaut issued a Commercial General Liability Policy, Policy #HM9126562, and a Commercial Umbrella Policy, Policy #UMB9126562, to Comfort Inn for the period of September 1, 2008 to September 1, 2009.  The CGL policy covered "bodily injury" or "property damage" only if the bodily injury or property damage was caused by an "occurrence."  The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death."  An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The CGL policy also contained an exclusion for:

> Any liability arising out of actual or alleged sexual misconduct, sexual abuse, licentiousness and/or sexual molestation, whether or not expected or intended, including without limitation, claims resulting from or arising out of negligent hiring, supervision, or transfer of, failure to supervise, or failure to dismiss any officer, "employee" or volunteer worker alleged to have committed any act of sexual misconduct, sexual abuse, licentiousness, or sexual molestation, nor do we have any duty to defend an insured in any "suit" seeking damages on account of such liability.

The CU policy also limited coverage to "bodily injury" or "property damage" caused by an "occurrence." Like the CGL policy, the CU policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The CU policy did not have any reference to sexual misconduct, but it did have an exclusion for "'Bodily injury' or 'property damage' expected or intended from the standpoint of an insured."

## **Legal Standards**

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

Under Missouri law, which applies to this diversity case, the rules governing the interpretation of insurance polices are well settled. *Columbia Mut. Ins. Co. v.*

*Schauf*, 967 S.W.2d 74, 77 (Mo. 1998).  A court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts.  *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007).  When interpreting a contract, a court must give the contract's terms their plain and ordinary meaning, unless a term is ambiguous.  *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997)); *Peters v. Emp'rs Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. 1993).  A term's plain and ordinary meaning is the meaning that an average layperson would give the term.  *Farmland Indus., Inc.*, 941 S.W.2d at 508.  In addition, a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole."  *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009).  Finally, in interpreting an insurance contract, the court must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant."  *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).  The burden of proving coverage is on the insured, but the burden of proving that a claim falls within an exclusion is on the insurance company.  *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo. Ct. App. 1993).

A term is ambiguous only if the terms are "reasonably and fairly open to different constructions, and there is duplicity, indistinctness, or uncertainty of meaning."  *Miller's Classified Ins. Co. v. French*, 295 S.W.3d 524, 526 (Mo. Ct.

App. 2009) (citations and internal quotation marks omitted).  When an ambiguity exists in an insurance policy, the court must interpret the policy in favor of the insured.  *Todd*, 223 S.W.3d at 160.  If, however, the policy is unambiguous, the court must enforce the contract's terms as written.  *Id.*

## Discussion

Argonaut argues that the sexual assault is not an "occurrence" under either policy because it was an intentional act, and therefore cannot be classified as an "accident."  It further argues that the CGL policy specifically excludes any claims "arising out" of sexual misconduct, and that the CU policy excludes claims for injuries that are expected or intended.  E.N argues, on the other hand, that her claims against Bainsaeid are not for injuries that were "intended" and that her claims of negligence against the hotel are distinct from the sexual assault claims, and are therefore covered.

Both the CGL policy and the CU policy cover damages for "bodily injury" caused by an "occurrence."  As set out above, both policies define "occurrence" as an "accident."  The term "accident" is not defined in either policy, so it must be given its ordinary meaning. In discussing this definition in a different context, the Missouri Court of Appeals recently defined "accident" to mean:

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.  Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a

> thing; a casualty; as, to die by an accident. . . . An 'accident' is not
> necessarily a sudden event; it may be the result of a process. . . . The
> determinative inquiry into whether there was an 'occurrence' or
> 'accident' is whether the insured foresaw or expected the injury or
> damages.

*Assurance Co. of America v. Secura Ins. Co.*, 384 S.W.3d 224, 234 (Mo. Ct. App. 2012) (quotations and citations omitted).

Bansaeid's actions cannot be considered an "accident" under any normal definition of the word. His acts, and the injury resulting from them, cannot have been unexpected. The Missouri Supreme Court has not decided a case presenting this precise issue. The Missouri Court of Appeals, however, has applied the "inferred-intent" standard to conclude that in the context of sexual molestation of a minor, the harm is intended as a matter of law. *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 645 (Mo. Ct. App. 1993)[1]; *see also M.A.B. v. Nicely*, 911 S.W.2d 313 (Mo. Ct. App. 1995). The Eighth Circuit has predicted that Missouri would adopt the inferred-intent standard for cases involving child sexual abuse. *See B.B. v. Cont'l Ins. Co.*, 8 F.3d 1288, 1292 (8th Cir. 1993). I therefore agree with Argonaut that the intentional tort claims against Bainsaeid resulting from his statutory rape of E.N. cannot be considered accidents.[2]

---

[1] "[T]o do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm." *State Farm*, 867 S.W.2d at 645 (quoting *AllState Ins. Co. v. Mugavero*, 589 N.E.2d 365, 369 (N.Y. 1992)).

[2] While these cases discuss whether child sexual abuse can be considered an "accident," the inferred-intent standard would of necessity also apply to the intentional act exclusion in the

- 7 -

E.N. argues that even if there was an inferred intent to harm, collateral damage from the statutory rape could still be classified as an "occurrence," relying on cases such as *Lexicon, Inc. v. ACE Am. Ins. Co.*, 634 F.3d 423, 427 (8th Cir. 2010) (which applied Arkansas law).  The collateral damage E.N. alleges includes post-traumatic stress disorder, anxiety, emotional distress, loss of enjoyment of life, psychological medical costs, and diminished future earnings capacity.  I disagree with E.N.'s classification of her psychological injuries as "collateral damage."  These are the exact kinds of harm that are foreseeable from statutory rape, and that form the basis of the inferred-intent rule in the first place.  *See Mid-Century Ins. Co. v. L.D.G.*, 835 S.W.2d 436, 440 (Mo. Ct. App. 1992) (quoting *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1025 (1991) ("Child molestation is not the kind of act that results in emotional and psychological harm only occasionally. The contrary view would be absurd.")).

Even though the claims against Bainsaeid are not covered, that does not necessarily mean that the negligence claims against Comfort Inn are not covered. E.N. alleges that the hotel was negligent regarding the safety of its premises and the hiring, training, and supervision of Bainsaeid.  The Missouri Supreme Court has not spoken to whether a commercial general liability or commercial umbrella policy covering an "occurrence," defined as an "accident," applies to this type of

---

CU policy.

- 8 -

negligence.  Many Missouri courts have rejected arguments that commercial policies do not provide coverage for forms of negligence that could also give rise to contract actions.  *See, e.g., Assurance Co. of America v. Secura Ins. Co.*, 384 S.W. 3d 224 (Mo. Ct. App. 2012) (negligent installation of windows was an occurrence); *Stark Liquidation Co v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385 (Mo. Ct. App. 2007) (negligently failing to inspect trees); *Lampert v. State Farm Fire and Cas. Co.*, 85 S.W.3d 90 (Mo. Ct. App. 2002) (negligent misrepresentation regarding defects in basement); *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 49 (Mo. Ct. App. 1998) (negligent representations regarding flooding of property).  I recognize that the reasoning of these cases does not automatically apply to other forms of negligence or to claims of personal injury rather than property damage.  *See  Am. Family Mut. Ins. Co. v. Wagner*, No. 05-4394-CV-C-NKL, 2007 WL 1029004 at *3 (W.D. Mo. Mar. 29, 2007).  This line of cases, however, provides support for my conclusions that the hotel's negligence constitutes an occurrence.

In interpreting insurance contracts, a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole."  *Ritchie*, 307 S.W.3d at 135.  When these policies are evaluated as a whole, and when I apply the ordinary definition of accident referred to in the *Secura Ins*. case discussed above (whether the insured foresaw or expected the injury or damages), I conclude that the Missouri Supreme Court would agree that the claims against the hotel are

claims of bodily injury caused by an "occurrence" or accident, as that term is used in these policies, because it is unlikely that the hotel would have expected or forseen these types of injuries as a result of its negligence.  This conclusion is consistent with the language of the Missouri Supreme Court in *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156 (Mo. 2007).  The court there concluded that assault claims against a teacher were not a covered occurrence because they were intentional.  But the court noted (in dicta) that the result would be different if the issue had been the claims against the district itself.  In that case, the court said, claims would be covered "so long as the district did not intend or expect the employee's intentional act.

That does not end the analysis of course, because Argonaut asserts that even if these claims meet the definition of occurrence, they are still excluded as claims arising out of sexual misconduct (the GCL exclusion) or intentional acts (the CU exclusion).

I agree with Argonaut that the GCL policy sexual misconduct exclusion applies to E.N.'s claims against the hotel.  That provision excludes coverage for:

> Any liability arising out of actual or alleged sexual misconduct, sexual abuse, licentiousness and/or sexual molestation, whether or not expected or intended, including without limitation, claims resulting from or arising out of negligent hiring, supervision, or transfer of, failure to supervise, or failure to dismiss any officer, "employee" or volunteer worker alleged to have committed any act of sexual misconduct, sexual abuse, licentiousness, or sexual molestation, nor

> do we have any duty to defend an insured in any "suit" seeking damages on account of such liability.

This exclusion unambiguously covers E.N.'s claims for Comfort Inn's negligence in employing Bainsaeid, as it explicitly lists "negligent hiring, supervision, . . . failure to supervise." This case is distinguishable from *Intermed Ins. Co. v. Hill*, 367 S.W.3d 84 (Mo. Ct. App. 2012), because the policy there did not include the explicit references excluding claims of negligent hiring and supervision, as the CGL policy does here.

But E.N. also brought claims for negligence regarding various safety concerns, such as patrolling the premises, proper use of security cameras, and negligently representing that the premises were safe. I conclude that under the plain language of the CGL policy, these claims seek to impose "liability arising out of" the sexual misconduct. In *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44-45 (Mo. Ct. App. 2007), the court held that the plaintiff's negligence claim against a nightclub arose out of an assault, and so the "assault or battery" exclusion applied even to the claims that the club was negligent in hiring, training, and supervising the employee who allegedly committed the assault. *See also Capitol Indemn. Corp. v. Callis*, 963 S.W.2d 247 (Mo. Ct. App. 1997); *McAlister v. Scottsdale Ins. Co.*, 1:09CV118SNLJ (E.D. Mo. Sept. 27, 2010) (collecting cases). E.N.'s claims against Comfort Inn all arise out of the sexual assault. As stated in *Trainwreck*, "although injuries may have been caused by the

- 11 -

negligent acts of the defendant that does not necessarily mean that they did not arise out of an assault or battery." 235 S.W.3d at 44. Here, even if Comfort Inn's negligence in providing security could be seen as a cause of the injuries, the injuries still arose out of the sexual misconduct. I conclude therefore that the CGL policy excludes all claims brought by E.N. against Comfort Inn.

The CU policy does not contain a sexual misconduct exclusion. However, the CU policy does contain an exclusion for "'Bodily injury' or 'property damage' expected or intended from the standpoint of *an* insured" (emphasis added). In contrast, the CGL policy contains a similar exclusion, but states that no injury will be covered which is "expected or intended from the standpoint of *the* insured" (emphasis added). The difference in language is significant, and has consistently been interpreted as such by most courts. *See Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 858-59 (Mo. Ct. App. 1999) ("coverage is precluded to all persons covered by the policy if any one of them breaches the cooperation clause" because the clause placed requirements on "any" insured); *see also Am. Motorists Ins. Co. v. Moore*, 970 S.W.2d 876, 881 (Mo. Ct. App. 1998) (citing *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810, 812 (Mo. 1985) (holding that "an insured" and "any insured" have the same meaning in the context of coverage exclusions)). As discussed above, the injuries to E.N. were intended by Bainsaeid. Since the CU policy excludes coverage for injury intended from the standpoint of "an insured,"

Comfort Inn's negligence would also be excluded from coverage under the CU policy if Bainsaeid was "an insured."  The parties do not dispute that Bainsaeid was an employee, and thus "an insured," during the October 2008 incident.  All claims against the hotel regarding the October incident are thus excluded from coverage under the CU policy.

A dispute remains, however, regarding whether Bainsaeid was an employee during the December incident.  None of the parties presented any evidence on whether he actually was an employee at that time; instead they base all their arguments on one another's allegations.  In her original petition in the underlying suit E.N. alleged that Bainsaeid was employed by Comfort Inn.  Argonaut relies on this allegation.  But in her amended petition, as well as in her statements of facts for the summary judgment motions, E.N. stated that Bainsaeid was not an employee.  She also has stated that he was "not on company time" during the December 2, 2008 rape.  The hotel filed a brief in support of E.N.'s arguments for coverage and says that E.N. has alleged that he was not an employee, but the hotel carefully refrains from taking a position on the actual fact.  Obviously, given that E.N. alleges claims for negligent supervision and hiring, she is alleging that he was an employee at some point.  But none of these arguments resolves the factual dispute about the December incident.  I therefore find that there is a genuine dispute of material fact –  whether Bainsaeid was an employee of Comfort Inn

during the December 2, 2008 statutory rape and therefore "an insured" – which is a necessary prerequisite to determining whether the CU policy exclusion for "intended or expected" injuries would apply to claims arising out of the December 2, 2008 incident.  If he was an employee, the claims are excluded.

### *Punitive Damages*

Finally, Argonaut seeks summary judgment that neither policy covers punitive damages.  The CU policy contains a "Punitive Damages Limitation Endorsement" that states, "This insurance does not apply to any liability for punitive or exemplary damages . . . unless such damages are awarded against the insured under the doctrine of vicarious liability."  None of the claims in the underlying suit were brought under the doctrine of vicarious liability.  The CU policy therefore does not cover punitive damages in this case.

The CGL policy does not contain a similar limitation.  However, the Missouri courts have held that insurance contracts that provide coverage for sums that the insured may become legally obligated to pay "as damages because of 'bodily injury' or 'personal injury'" do not extend to punitive damages.  *Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 208-09 (Mo. Ct. App. 1983).  Neither policy covers E.N.'s claims for punitive damages.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of plaintiff Argonaut Great Central Insurance Company  [#60] is GRANTED in part, and DENIED in part.  Both policies exclude coverage for all claims brought by E.N. against Nasser Bainsaeid.  Neither policy covers any claims for punitive damages.  The Commercial General Liability policy excludes coverage for all claims brought by E.N. against Comfort Inn.  The Commercial Umbrella policy excludes claims brought by E.N. against Comfort Inn relating to the October 8, 2008 incident.  The motion for summary judgment is denied only as to the issue of whether the Commercial Umbrella policy excludes E. N.'s claims against Comfort Inn arising out of the December 2, 2008 incident.

**IT IS FURTHER ORDERED** that the motion for summary judgment of defendant E.N. [#81] is denied.

**IT IS FURTHER ORDERED** that the undersigned will hold a telephone conference with all counsel on **Friday, March 22, 2013 at 9:30 a.m.** to discuss a schedule for resolving the remaining issues in this case.  **Plaintiff's counsel is responsible for placing the call.**  In advance of the telephone conference, counsel must meet and confer and attempt to come to an agreed schedule for all steps needed to finally resolve this case.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of February, 2013.