UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) VALLEY VILLAGE, LLC, d/b/a ) COMFORT INN & SUITES ) CHESTERFIELD, et al., ) ) Defendants. ) | Case No. 4:10 CV 2247 CDP |

## MEMORANDUM OPINION

Plaintiff Argonaut Great Central Insurance Company brings this suit for a declaratory judgment seeking to establish that the claims E.N. brought against Valley Village, LLC, doing business as Comfort Inns & Suites Chesterfield, in an underlying state case are not covered by the insurance policies Argonaut issued to Valley Village. The case is now before me for decision following a bench trial, as well as on defendant E.N.'s motion to dismiss, or in the alternative, to abstain from judgment.

On February 25, 2013, I issued a memorandum and order granting in part, and denying in part, Argonaut's motion for summary judgment, and denying E.N.'s motion for summary judgment. It has since been established that the supposedly undisputed evidence provided to me by all parties at the summary judgment stage was inaccurate, particularly with regard to the dates of the sexual assaults at issue in the underlying

lawsuit. My summary judgment opinion considered two Argonaut policies held by Valley Village, a Commercial General Liability policy and a Commercial Umbrella policy. The issue of the dates does not impact my earlier conclusions regarding the CGL policy—namely, that it does not provide coverage for either of the incidents—and therefore I will not revisit that issue. Nor will I revisit my earlier opinion regarding punitive damages, as that also remains unchanged.

On summary judgment, I also held that the CU policy excludes claims relating to the first sexual assault, leaving only the coverage of the CU policy regarding the second assault for trial. Summary judgment motions are interlocutory in nature, and may be reconsidered and revised up until the time a final judgment is entered. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.,* 2011 WL 1599550, at *1 (E. D. Mo. Apr. 27, 2011) (citing *Ideal Instruments, Inc. v. Rivard Instruments, Inc.,* 434 F. Supp. 2d 640, 647 (N.D. Iowa 2006)). Under Rule 54(b), "a district court may, in its discretion, reconsider an interlocutory order to correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Seubert v. FFE Transp. Servs., Inc.,* 2013 WL 827547, at *1 (E.D. Mo. Mar. 6, 2013) (quoting *Munroe v. Cont'l W. Ins. Co.,* 2012 WL 4358642, at *2 (E.D. Mo. Sept. 24, 2012)). Accordingly, given the additional, corrected evidence now provided to me, I will consider the coverage of the CU policy as it pertains to both incidents.

For the reasons that follow, I will deny E.N.'s motion to dismiss, or in the alternative, to abstain from judgment, and I will enter judgment in favor of defendants Valley Village and E.N. and against Argonaut with respect to the CU policy.

## Motion to Dismiss

During the bench trial, defendant E.N. filed a motion to dismiss, or in the alternative, to abstain from ruling in this declaratory judgment action, arguing that the same parties and issues are involved in the underlying state court action. "The full scope of a district court's discretion to grant a stay or abstain from exercising jurisdiction under the Declaratory Judgment Act differs depending upon whether a 'parallel' state court action involving questions of state law is pending." *Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 967 (8th Cir. 2013) (citing *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 999 (8th Cir. 2005)). "Where such an action is pending, a district court enjoys broad discretion." *Id.* It would ordinarily be "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S 491, 495 (1942).

If there is no pending parallel state action, discretion to abstain or grant a stay still exists but is less broad. *Lexington*, 721 F.3d at 968 (citing *Scottsdale*, 426 F.3d at 998). The Eighth Circuit has adopted a six factor test to apply in cases with no parallel

action.  The six factors are:  (1) whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue"; (2) whether the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the [federal] proceeding"; (3) "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts"; (4) "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending"; (5) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'"; and (6) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'"  *Scottsdale*, 426 F.3d at 998.

Here, the state court suit is brought by E.N. against Valley Village and Nasser Bainsaeid.  It is a liability case with issues that include personal injury and negligence. This federal declaratory judgment suit, on the other hand, raises issues of coverage and requires interpretation of the insurance contracts between the parties as well as a determination of Bainsaeid's employment status at the time of the sexual assaults. While some of the same factual evidence will undoubtedly be relevant, the state court issues revolve around whether Bainsaeid perpetrated the acts and whether Valley

Village was negligent in providing for resident safety and handling its employees. This federal case, on the other hand, is not concerned with Valley Village's alleged deficiencies in allowing the sexual assaults, but rather the nature of Bainsaeid's relationship to Valley Village and whether the assaults are covered under the insurance policies. Neither the parties nor the issues are the same, and thus the cases are not parallel.[1]  *See Allstate Ins. Co. v. Garrett*, 1 Fed. App'x 615, 616 (8th Cir. 2001) (finding no parallel action where the state court case does not consider the scope of the insurance policies and no indemnity action has been filed).

Furthermore, after applying the six-factor test adopted in *Scottsdale*, I conclude that a stay or dismissal is not appropriate in this case. Both factors one and two weigh in favor of this case's proceeding. A ruling on the coverage issue would clarify the legal relations between the parties to this suit and would terminate the coverage dispute. Factors three and four also weigh against a stay. The coverage issues have not been raised in the state court case, so a determination here would not conflict with any state court decision. Nor is there any efficiency gained by waiting for the state court decision, especially considering that the trial has already concluded in this case.

---

[1] E.N. argues that other courts have found cases to be parallel even when the insurer was not a named party in the underlying state suit. Regardless of the parties, the question of insurance coverage was at issue in all of the underlying cases cited by E.N. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 280 (1995) ("The Hill Group initiated an action against [Insurer] . . . in state court"); *Cincinnati Indem. Co. v. A & K Const. Co.*, 542 F.3d 623, 624 (8th Cir. 2008) ("Cincinnati also filed for declaratory judgment in Missouri state court, requesting interpretation of the same policy at issue here"); *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000) ("The Hunts filed with the state court a Petition to Collect Insurance . . ."). This is not the case here, despite E.N.'s contention that an indemnity action may be brought at some future time in the underlying state case.

Furthermore, since no parallel case is pending in state court, judicial economy is served by deciding this case here in federal court.

As to factor five, allowing this suit to go forward would not result in "unnecessary entanglement" between the federal and state court systems. Again, like *Scottsdale,* "[a]ny common issues do not hinge on the same questions of law—the state action sounds in tort and the federal action in contract." 426 F.3d at 999. This federal action requires an interpretation of the insurance contract between the parties. The relevant issue will be whether Bainsaeid was an employee working in the course of employment at the time of the sexual assaults. The state court action involves issues of Missouri tort law which will not depend on the same factual determinations. Any overlapping facts are insignificant and would not create entanglement between the court systems.

Finally, I find that Argonaut is not using this action as a device for "procedural fencing," the concern of factor six. Argonaut is not a named party in the state court litigation. There is no concern that a judgment here would be used to preclude a judgment in state court. Therefore, all six factors weigh in favor of this declaratory judgment suit proceeding.

## Findings of Fact

Defendant Valley Village, LLC owns and operates the Comfort Inn & Suites Chesterfield hotel located at 18375 Chesterfield Airport Road, Chesterfield, Missouri.

Nasser Bainsaeid was employed as a front desk clerk at the Comfort Inn & Suites Chesterfield between August 18, 2008 and December 11, 2008. Bainsaeid was assigned to work the front desk between the hours of 3:00 p.m. and 11:00 p.m. In September of 2008, E.N., then a 13-year old minor, moved into the Comfort Inn & Suites Chesterfield with her mother, S.N.

On November 2, 2008, Bainsaeid took E.N. to a hotel room, Room 200 or one or two down from there, shortly after 11:00 p.m. after he finished his shift at the front desk. Bainsaeid kissed E.N., performed oral sex on her, and digitally penetrated E.N.'s vagina. Bainsaeid attempted sexual intercourse but she told him to stop.

On December 2, 2008, E.N., who was by then fourteen years old, was using the computer in the hotel lobby when Bainsaeid approached her during his shift at the front desk, handed her a key to Room 111, and told her to meet him in Room 111 in five minutes. E.N. entered Room 111, located next to the front desk of the hotel, using the key Bainsaeid had given her. Approximately five minutes after E.N. entered Room 111, Bainsaeid entered Room 111, bringing with him the cordless telephone from the front desk. At approximately 8:00 p.m. on December 2, 2008, during Bainsaeid's shift, Bainsaeid and E.N. engaged in oral sex and sexual intercourse in Room 111. The December 2, 2008 incident ended when the cordless phone for the front desk phone rang. Bainsaeid answered the call on the cordless phone, got dressed, left Room 111, and returned to work at the front desk. E.N. got dressed, left Room 111,

and returned the key card to Bainsaeid at the front desk.   Later that evening, E.N. returned to the front desk to get the key to Room 111 so she could retrieve her glasses which she had left in Room 111.

Argonaut issued a Commercial General Liability Policy, Policy #HM9126562, and a Commercial Umbrella Policy, Policy #UMB9126562, to Comfort Inn for the period of September 1, 2008 to September 1, 2009.   The CU policy limited coverage to "bodily injury" or "property damage" caused by an "occurrence."   The CU policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   The CU policy also had an exclusion for "'Bodily injury' or 'property damage' expected or intended from the standpoint of an insured."   "An insured" under the CU policy included "your employees . . . but only for acts within the scope of their employment by you."

## Conclusions of Law

This Court has jurisdiction over Argonaut's claims under 28 U.S.C. § 1332 and 28 U.S.C. § 2201(a).   Missouri contract and agency law provides the basis for my decision.

The only issue remaining in this case is whether Valley Village's alleged negligence regarding the safety of its premises and the hiring, training, and supervision of Bainsaeid is covered by the CU policy.   As discussed in my February 25, 2013 opinion, the claims against Valley Village constitute an "occurrence" or accident under

the policies. However, the CU policy contains an exclusion for "'Bodily injury' or 'property damage' expected or intended from the standpoint of *an* insured" (emphasis added). This is significant insofar as it means an excluded act of *any* insured bars coverage for *all* insureds. *Compare Pac. Ins. Co. v. Catholic Bishop of Spokane*, 450 F. Supp. 2d 1186, 1199 (E.D. Wash. 2006) (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81,* 579 P.2d 1015, 1015 (Wash. Ct. App. 1978) (holding that 'the insured' means the contract between the insurer and several insureds is separable, and an excluded act of one insured does not bar coverage for additional insureds) *with Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 859 (Mo. Ct. App. 1999) (holding that because a policy excluded coverage for intentional acts by "any insured," coverage was excluded for the negligent party even despite a severability clause elsewhere in the insurance contract). *See also Am. Motorists Ins. Co. v. Moore*, 970 S.W.2d 876, 881 (Mo. Ct. App. 1998) (citing *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810, 812 (Mo. 1985) (holding that "an insured" and "any insured" have the same meaning in the context of coverage exclusions).

The relevant question, then, is whether Bainsaeid was "an insured" at the time of each of the two incidents. If he was, then the claim is excluded from coverage because it is for an injury "expected or intended by an insured." "An insured" under the CU policy included "your employees . . . but only for acts within the scope of their employment by you." "The course and scope of employment is defined as acts (1)

which, even though not specifically authorized, are done to further the business or interests of the employer under his 'general authority and direction' and (2) which naturally arise from the performance of the employer's work." *Inman v. Dominguez*, 371 S.W.3d 921, 924 (Mo. Ct. App. 2012) (internal quotations and citations removed). "'Naturally,' implies that the employee['s] conduct must be usual, customary and expected." *Id.* (quoting *Md. Cas. Co. v. Huger*, 728 S.W.2d 574, 579 (Mo. Ct. App. 1987)).

*Inman* further held that some actions can be "too outrageous and unexpected to ever be considered within the course and scope of . . . employment." *Id.* at 925-26 (citing *Wellman v. Pacer Oil Co.*, 504 S.W.2d 55 (Mo. 1974) (en banc); *Noah v. Ziehl*, 759 S.W.2d 905 (Mo. Ct. App. 1988)). In *Inman*, one truck driver stabbed another at a truck stop because the latter driver (the stabbing victim) had refused to let the first driver merge in front of him. *Id.* at 922-23. The stabbing victim sued the first driver, as well as the company that employed him. *Id.* The court held that the stabbing was too outrageous to be considered within the scope of his employment for the trucking company. *Id.* at 925-26. Also relied upon by the court was the fact that he acted not in furtherance of his employer's interests, but with a personal goal. *Id.* at 926 (citing *Noah*, 759 S.W.2d at 911).

Such is the case here. Bainsaeid accompanied E.N., a minor girl, to a hotel room and engaged in various sexual activities with her. That conduct is clearly too

outrageous and unexpected as to be within the scope of his employment. Furthermore, he was acting not in furtherance of his employer's interests, but with his own personal interest. It is thus immaterial whether he was "on the clock" at the time of the incidents. The acts of Bainsaeid were not within the scope of his employment, and thus he was not "an insured" under the clear terms of the CU policy. Since Bainsaeid was not "an insured," the exclusion for intentional acts of an insured does not apply. I find that the CU policy provides coverage for Valley Village's alleged negligence with regard to both incidents.

Accordingly,

**IT IS HEREBY ORDERED** that defendant E.N.'s motion to dismiss, or in the alternative, to abstain from judgment is denied.

**IT IS FURTHER ORDERED** that plaintiff's requested declaratory judgment relief is granted in part, and denied in part. The CGL policy, Policy #HM9126562, does not provide coverage with respect to the claims and causes of action asserted by defendant E.N. against Bainsaeid and Valley Village in the underlying lawsuit. The CU policy, Policy #UMB9126562, does not provide coverage with respect to the claims and causes of action asserted by defendant E.N. against Bainsaeid in the underlying lawsuit, but does provide coverage with respect to the claims and causes of action against Valley Village. Argonaut is not obligated to defend or indemnify Bainsaeid in connection with any claims in the underlying suit. Argonaut is obligated

to defend and indemnify Valley Village in the underlying suit pursuant to the CU policy.

A separate Judgment shall accompany this Memorandum Opinion.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of October, 2013.